The document below is hereby signed.

Signed: April 18, 2018



_S. Martin Teel, Jr._
_United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARY HOOKER ROBINSON, | ) | Case No. 17-00394 |
| | ) | (Chapter 13) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT OVERRULING OBJECTION TO CLAIM OF BANK OF AMERICA, N.A.**

The debtor, Mary Hooker Robinson, has objected to the claim of Bank of America, N.A. ("Bank of America"), which, as contemplated by the court's Scheduling Order, has moved for summary judgment. Robinson is proceeding pro se, and accordingly the Scheduling Order advised Robinson regarding the rules of procedure concerning motions for summary judgment. *See Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988). Robinson filed an opposition to the motion for summary judgment, which, as discussed below, fails to present grounds warranting denying the motion for summary judgment. The court gave Robinson until April 13, 2018, to supplement that opposition based on discovery she was obtaining from Bank of America. Robinson failed to supplement her opposition. For the following reasons, I will

grant summary judgment overruling the objection to the claim.

I

PRIMA FACIE VALIDITY OF THE PROOF OF CLAIM

As the court warned Robinson in an order entered on March 22, 2018, Bank of America's proof of claim meets all the requirements of Rule 3001, and accordingly "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  Robinson has presented no evidence to challenge the prima facie validity of the proof of claim, and nothing in the proof of claim shows that the claim is invalid.

II

THE OBJECTION TO THE PROOF OF CLAIM

Robinson's objection to claim alleges that the proof of claim is false, and makes two specific objections in that regard. First, the objection to claim alleges:

> 11. Debtor declares the claim [debt] is not owed. BofA has not produced evidence to support its false inconsistent calculations of debt owed. Debtor has ***Certificates of Satisfaction***, resulting from fake, false sale of Debtor's properties.  BofA attempting to foreclose on property that is paid-in-full. For **OVER** ten [10] years, BofA has refused to verify debt, provide financial records & accountings.

Second, the objection alleges that Bank of America falsely claims to be the current creditor because the *Note* she executed represents that a different entity, Bankers Financial Group, Inc., is the lender.  In that regard, the objection elaborates that:

2

6. BofA are not the "***real party in interest***." BofA doesn't have a genuine stake in the outcome of this case, in part, because they cannot show they took an assignment of original mortgage. Hence, BofA doesn't have standing in this case.

III

THE OBJECTION REGARDING THE AMOUNT CALCULATED AS DUE

As to Robinson's objection regarding the calculation of the debt owed, the proof of claim includes an attachment in which, in Part 5: Loan Payment History from First Date of Default (Proof of Claim, pages 4 to 16 of 53), the proof of claim details each amount incurred and unpaid since the first date of default. Robinson has filed no affidavit that is adequate to rebut the prima facie validity of the proof of claim regarding the calculation of the debt owed. Robinson has not pointed to any payments for which she was not given credit or to any charges claimed that have not actually been incurred. The objection regarding the calculation of the debt owed must be overruled.

IV

THE OBJECTION REGARDING THERE HAVING
BEEN NO ASSIGNMENT TO BANK OF AMERICA

As to the remaining objection that the mortgage was not assigned to Bank of America, the attachments to the proof of claim demonstrate that the *Note* and the *Deed of Trust* executed by Robinson and her husband in favor of Bankers Financial Group, Inc., were assigned to Countrywide Home Loans, Inc. ("Countrywide"), which, in turn assigned them to Bank of America.

3

Robinson has not challenged the authenticity of those attachments.

First, the attachments to the 53-page proof of claim make clear that whatever rights Bankers Financial Group, Inc., had were first assigned to Countrywide. An *Assignment of Deed of Trust* (Proof of Claim at page 38 of 53) executed on April 21, 1999 (the date of the execution of the *Note* and the *Deed of Trust*) assigned both the *Deed of Trust*[1] and the *Note* secured thereby to Countrywide. There is also an *Amended and Restated Note* executed by Robinson and her husband on April 21, 1999 (Proof of Claim at page 46 of 53), amending the earlier *Note* of the same date of April 21, 1999, which includes a sentence that "[t]he Lender is Countrywide Home Loans, Inc."[2] It is thus clear that the *Deed of Trust* and the *Note* were assigned to Countrywide.[3] The *Amended and Restated Note* revised the amounts owed and the maturity of the *Note*. A later *Loan Modification*

---

[1] The *Deed of Trust* is found at Proof of Claim page 29 of 53.

[2] The sentence is partially redacted over, making it difficult to decipher the above-quoted words.

[3] The *Note* is found at Proof of Claim page 21 of 53. The *Note* bears an endorsement of the *Note* by Bankers Financial Group, Inc. to an entity whose name begins "COUNTRYWIDE HOME," and although the balance of the entity's name is covered over by a post-it bearing handwriting remarking on the signatures, the *Assignment of Deed of Trust* dated April 21, 1999, and the *Amended and Restated Note* of the same date make it evident that it is Countrywide to whom the *Note* was endorsed.

4

*Agreement* (Proof of Claim at page 43 of 53),[4] between Robinson and her husband, as obligors under the *Note* and the *Amended and Restated Note*, and Countrywide amended the *Deed of Trust* to reflect the changed terms of the *Note* set forth in the *Amended and Restated Note* and to reflect that the *Deed of Trust* (as amended) secured payment of the *Amended and Restated Note*.[5]

Second, the *Deed of Trust* and the *Amended and Restated Note* were assigned to Bank of America.  An *Assignment of Deed of Trust* (Proof of Claim at page 40 of 53), dated August 30, 2016, seven years after the April 21, 1999, documents were executed, recites that Countrywide assigns to Bank of America "All beneficial interests under [the] Deed of Trust . . . **together with the**

---

[4] On October 28, 2004, Robinson and her husband signed the *Loan Modification Agreement*.  Countrywide signed the *Loan Modification Agreement* on March 18, 2005.

[5]  The *Loan Modification Agreement*, referring to the *Deed of Trust* as the Security Instrument, provided:

> The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its [their] entirety as follows:
>
> Borrower owes Lender the principal sum of Two Hundred Two Thousand Three Hundred Fifty One Dollars and Twenty Seven Cents (U.S. Dollars $202,351.27). [This debt is evidenced by Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 01, 2030.]

(Bracketed portions in the original.)

**note(s) and obligations therein described** in the money due and to become due thereupon with interest in all rights accrued or to accrue under said Deed of Trust." [Emphasis added.]

Accordingly, I reject Robinson's contentions that the *Deed of Trust* and the *Note* as amended by the *Amended and Restated Note* were not assigned to Bank of America.[6]

V

ROBINSON'S CONTENTION THAT THE
VA-GUARANTEED NATURE OF THE NOTE PREVENTS RESORT
TO D.C. CODE § 28:3-309(a) TO ENFORCE THE LOST NOTE

The proof of claim includes an *Affidavit of Lost Note* acknowledging that the *Amended and Restated Note* has been lost. In pursuing its motion for summary judgment, Bank of America notes that, despite the loss of the *Amended and Restated Note*, it is entitled to enforce the *Amended and Restated Note* by reason of

---

[6] Although the proof of claim does not show that the *Amended and Restated Note* was ever endorsed to Bank of America, the proof of claim shows, as discussed above, that ownership of the *Amended and Restated Note* was assigned to it. Accordingly, upon obtaining possession of the *Amended and Restated Note*, Bank of America would have been a "nonholder in possession of the instrument who has the rights of a holder" within the meaning of D.C. Code § 28:3-301 and entitled to enforce the *Amended and Restated Note*.

6

D.C. Code § 28:3-309(a),[7] which provides:

> A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (1) The person seeking to enforce the instrument:
>
> (A) Was entitled to enforce the instrument when loss of possession occurred; or
>
> (B) Has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
> (2) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Robinson's opposition to the motion for summary judgment does not contend that the proof of claim fails to show that the *Amended and Restated Note* is enforceable under D.C. Code § 28-3-309. Instead, with respect to Bank of America's citation of D.C. Code § 28:3-309, Robinson contends that "DC Code is not applicable & does not govern a default of a Promissory Note Guaranteed By

---

[7] Pursuant to D.C. Code § 28:3-301:

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 28:3-309 or 28:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Veteran's Affairs [VA] Home Loan Benefits." Robinson has not cited any statute or regulation that would make D.C. Code § 28:3-309 inapplicable to the right to enforce a lost note when it is a VA-guaranteed note, and there is no such statute or regulation.

True, the holder of a VA-guaranteed promissory note may be subject to requirements under title 38 of the United States Code and applicable regulations regarding the enforcement of such a VA-guaranteed promissory note.[8] However, nothing in title 38 of the United States Code, or in regulations issued thereunder, displaces state law provisions and prevents D.C. Code § 28:3-309 from authorizing Bank of America to enforce a lost VA-guaranteed note.

Robinson's objection was that Bank of America never took an assignment of the mortgage (but, as discussed earlier, the attachments to the proof of claim demonstrate that there *was* an assignment to Bank of America). The objection did not raise any contention that Bank of America was not entitled under D.C. Code § 28:3-309 to enforce the *Amended and Restated Note*. The *Affidavit of Lost Note* plainly establishes that the elements of

---

[8] For example, under 38 C.F.R. § 36.4280(e), with certain exceptions, "a holder shall not begin proceedings in court or give notice of sale under power of sale, repossess the security, or accelerate the loan, or otherwise take steps to terminate the debtor's rights in the security until the expiration of 30 days after delivery by certified mail to the Secretary of a notice of intention to take such action . . . ." The issue here is not foreclosure proceedings, but an objection to Bank of America's claim based on an alleged lack of standing.

8

D.C. Code § 28:3-309(a)(2) and (3) apply,[9] and can be read as establishing that the remaining element, of D.C. Code § 28:3-309(a)(1), applies because the *Amended and Restated Note* was lost

---

[9] The *Affidavit of Lost Note* states:

    5. After due diligence and based on BANA's business records, possession of the Note cannot reasonably be obtained because the Note was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person.
    6. Based on BANA's business records, the loss of possession of the Note is not the result of a rightful transfer or a lawful seizure of the Note.

by Bank of America.[10]  Even if the *Affidavit of Lost Note* could be viewed as not adequately establishing all of the elements of D.C. Code § 28:3-309(a), Robinson failed to specify that as an objection to the proof of claim.  Moreover, the proof of claim asserts a right to enforce the *Amended and Restated Note*, and Robinson has not produced any competent evidence to rebut the prima facie validity of the proof of claim in that regard.  Robinson has produced no competent evidence to demonstrate that the requirements of D.C. Code § 28:3-309 have not been met by

---

[10]  The *Affidavit of Lost Note* implies that Bank of America held possession of the *Amended and Restated Note* when it was lost such that it was "entitled to enforce the instrument when loss of possession occurred."  The affiant states "I have personal knowledge of BANA's procedures for the **safekeeping and retrieval of original notes** serviced by BANA and BANA's lost note procedures for determining that an original note is lost", and "that BANA's lost note procedures were followed in determining that **the Note has been lost and that a good faith effort was made to locate the Note** in accordance with such procedures."  (Emphasis added).  Although the proof of claim does not show that the *Amended and Restated Note* was ever endorsed to Bank of America, the proof of claim shows that ownership of the *Amended and Restated Note* was assigned to Bank of America.  Accordingly, upon obtaining possession of the *Amended and Restated Note*, Bank of America would have been a "nonholder in possession of the instrument who has the rights of a holder" within the meaning of D.C. Code § 28:3-301, and entitled to enforce the *Amended and Restated Note*.

Even if the *Amended and Restated Note* was lost by Countrywide, without Bank of America obtaining possession, D.C. Code § 28:3-309(a)(1)(B) would have entitled Bank of America to enforce the *Amended and Restated Note* on the basis that Bank of America "directly . . . acquired ownership of the instrument from a person [Countrywide] who was entitled to enforce the instrument when loss of possession occurred."

10

Bank of America.[11]

## VI

## ROBINSON'S CONTENTION THAT THE VA-GUARANTEED NATURE OF THE NOTE PREVENTS ENFORCEMENT OF THE NOTE IN THE D.C SUPERIOR COURT

Robinson also contends that:

> 38 Title USC prohibits . . . judicial foreclosure of a VA loan under DC law.  No judicial lien is recorded in the DC Recorder of Deeds records.  A valid judicial lien cannot legally be entered by DC Superior.  Any such judicial lien is null & void ab nitio[.]

Nothing in title 38 of the United States Code prohibits Bank of America from bringing a judicial foreclosure proceeding.  In any event, Robinson's contention is irrelevant because the issue here is not whether such a proceeding could be brought but whether to disallow Bank of America's claim as a claim to be paid under the terms of Robinson's confirmed plan.

---

[11] Robinson's opposition to the motion for summary judgment asserts that "BofA has not entered or produced into the record any evidence to verify that BofA is now, or was ever the 'noteholder' on Debtor's family home [the property in question.]."  That vague contention was not raised in the objection to claim, and it disregards the right Bank of America had to enforce the *Amended and Restated Note* as a "nonholder in possession of the instrument who has the rights of a holder" within the meaning of D.C. Code § 28:3-301.  *See* n.10, *supra*.  Moreover, the proof of claim is prima facie valid, and the obligation to rebut the prima facie validity of the proof of claim requires Robinson to produce evidence rebutting that prima facie validity.

VII

THE INDEMNIFICATION FOR AFFIDAVIT OF LOST NOTE

> Under 28:3-309(b):
>
> A person seeking enforcement of an instrument under subsection (a) of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 28:3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

However, Robinson has not objected to enforcement of the *Amended and Restated Note* based on this provision. Moreover, the proof of claim includes an *Indemnification for Affidavit of Lost Note* executed by a vice president of Bank of America, and pursuant to which Bank of America agrees:

> to indemnify and hold the maker of the note, GREGORY D. ROBINSON AND MARY HOOKER ROBINSON, and any of the maker's heirs and assigns harmless against any loss or damage, including principal, interest, reasonable attorneys' fees and costs, that might occur by reason of a claim by another person to enforce the note.

That indemnification agreement adequately protects Robinson against loss that might occur by reason of a claim by a person other than Bank of America to enforce the *Amended and Restated Note*. There is minimal risk that any such loss would ever

occur.[12] In any event, the court takes judicial notice that Bank of America, a publicly traded company, has filed reports with the Securities and Exchange Commission reflecting that its assets far exceed its liabilities, and hence that it is more than sufficiently solvent to honor the indemnification agreement. This more than reasonably establishes that the indemnification agreement adequately protects Robinson.

## VIII

### ROBINSON'S CONTENTION THAT EXEMPTION OF THE PROPERTY SECURING BANK OF AMERICA'S CLAIM REQUIRES DISALLOWANCE OF THE CLAIM AS A SECURED CLAIM

In opposing the motion for summary judgment, Robinson points

---

[12] Only a holder in due course would be entitled successfully to enforce the *Amended and Restated Note* in the face of a defense that the debt is to be paid to Bank of America as the rightful owner of the *Amended and Restated Note*. See D.C. Code § 3-305. It is unlikely that there is any entity who holds or will hold the lost *Amended and Restated Note* and could be treated as a holder in due course, including having acquired the *Amended and Restated Note* for value, and having obtained such possession in good faith and without notice that the *Amended and Restated Note* was in default. *See* D.C. Code § 28:302(a)(2). The proof of claim shows that the *Amended and Restated Note*, which was for a principal amount of $202,351.27, has been in default for years. The proof of claim shows that the amount owed on the petition date was $370,282.23 and that the amount necessary to cure any default as of the petition date was $213,407.88. If someone now has possession of the *Amended and Restated Note* and paid value for it, that person would almost undoubtedly have already contacted Robinson regarding payment, yet no such creditor has surfaced in the bankruptcy case. The *Amended and Restated Note* refers to the existence of a deed of trust. Any entity planning to obtain the *Amended and Restated Note* for value would almost certainly learn from the land records that Bank of America is the assignee of the *Deed of Trust* and of the *Amended and Restated Note*, and, in turn, learn that Bank of America never sold the *Amended and Restated Note*.

to exemption of the property that is the subject of the *Deed of Trust*, as authorized by 11 U.S.C. § 522, pursuant to D.C. Code § 15-501, and argues that the *Deed of Trust* is ineffective by reason of the property being exempted.  However, under 11 U.S.C. § 522(c)(2), a claim of exemption is not effective against a lien unless the lien is avoided or is void under 11 U.S.C. § 506(d).  The *Deed of Trust* has not been avoided as a lien against the property, and it is not void under § 506(d).  The exempt character of the property is not a basis for disallowing Bank of America's claim as a secured claim.

## VIII

## CONCLUSION

In accordance with the foregoing, it is

ORDERED that Bank of America's motion for summary judgment is granted and the debtor's objection to Bank of America's claim is overruled.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.